**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL KANTOR, On Behalf of Himself** | : | **CIVIL ACTION** |
| **and All Others Similarly Situated** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HIKO ENERGY, LLC** | : | **NO. 14-5585** |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                                              **April 14, 2015**

In this putative class action complaining of the tactics used to lure customers by competitors in the deregulated electricity supply market, the significant issue presented is whether claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") are barred by the Pennsylvania economic loss doctrine. Stated differently, are we bound by the Third Circuit's predictive holding in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), that statutory fraud claims may not be brought with a contract action? We conclude that because the Pennsylvania courts have since ruled to the contrary, *Werwinski* no longer has precedential effect. Therefore, we hold that fraud claims brought under the UTPCPL are not barred by the economic loss doctrine.

The plaintiff Michael Kantor ("Kantor") claims that the defendant Hiko Energy, LLC ("Hiko"), an electricity supply company, deceived him and other consumers. According to Kantor, Hiko enticed electricity customers to switch from their providers to Hiko by promising them competitive market-based rates and savings on their energy bills. The customers initially paid lower rates for a short time; but, despite Hiko's

promise, they later paid higher rates than they would have if they had stayed with their original providers.

### Background[1]

Pennsylvania deregulated the supply of energy to its citizens in 1996. As a result, consumers may now purchase energy, such as gas and electricity, from an energy service company of their choice. Consumers are no longer required to purchase energy from local energy providers.[2]

Hiko, a New York limited liability company, is an electricity supplier licensed to do business in Pennsylvania.[3] Hiko solicits customers directly. In 2012 and 2013, Kantor received several solicitations from Hiko. The mailings represented that customers would save money on their electricity bills by switching from their local utility companies to Hiko. Kantor later visited Hiko's website, which similarly represented that its customers would save on their energy bills.[4]

Hiko salespersons also advised potential customers that they would save money by switching to Hiko. These representatives promised potential customers that they would save a certain percentage on their monthly bills.[5]

In February of 2013, Kantor submitted an application to switch to Hiko from PECO, his local energy provider. He became a Hiko customer in March of 2013.[6] Until

---

[1] The facts as alleged in the complaint, are accepted as true and viewed in the light most favorable to Kantor for the purposes of ruling on the motion. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

[2] Compl. ¶ 9.

[3] Compl. ¶ 8.

[4] Compl. ¶¶ 11-12.

[5] Compl. ¶ 13.

February of 2014, Kantor's Hiko rate was competitive with the PECO rate.  In February of 2014, the Hiko rate nearly tripled, going from 0.096723 per kilowatt hour in January of 2014 to 0.289000.[7]

From March 2013 to April 2014, Hiko charged Kantor substantially more than he would have paid had he stayed with PECO.  Kantor switched to Hiko in reliance on the promise that he would be charged less for electricity.  Kantor alleges that he would not have switched to Hiko had he known that he would be charged "substantially higher" rates.  After paying the higher than promised rates for months, Kantor cancelled his Hiko service and switched back to PECO.[8]

In June 2014, the Pennsylvania Attorney General, via the Bureau of Consumer Protection and the Office of the Consumer Advocate, filed a joint complaint with the Pennsylvania Public Utility Commission ("PUC") against Hiko.[9]  The PUC complaint alleges that Hiko lured customers with false promises of guaranteed savings.[10] Specifically, the PUC complaint alleges that Hiko made deceptive and misleading promises of savings to potential customers in violation of the UTPCPL (Count I); switched customers to Hiko without their consent, known as slamming (Count II); handled customer complaints improperly and in bad faith (Count III); failed to provide rate information (Count IV); failed to provide accurate price information (Count V);

---

[6] Compl. ¶ 20.

[7] Compl. ¶ 21.

[8] Compl. ¶ 21.

[9] *See* Compl. Ex. A (PUC Compl.).

[10] Compl. Ex. A (PUC Compl.) at ¶ 21.

charged prices that were unrelated to the variable rate outlined in the Customer Disclosure Statement (Count VI); violated state law by basing service decisions on potential customers' credit scores (Count VII); and failed to comply with the Telemarketer Registration Act (Count VIII).[11]

The PUC complaint seeks revocation of Hiko's license to do business in the state and imposition of civil penalties.   It also asks the PUC to order Hiko to pay restitution to its customers, stop making deceptive price guarantees, cease switching customers to Hiko without consent, implement appropriate customer dispute procedures, and otherwise comply with state law.[12]

On September 29, 2014, Kantor, on behalf of himself and a class of similarly situated plaintiffs, filed his class action complaint.  The complaint asserts three causes of action.  Kantor avers that Hiko violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")[13] by misrepresenting that its energy rates would be based on market factors and result in savings to customers (Count I); breached its contract and the implied covenant of good faith and fair dealing by failing to charge a reasonable rate as promised (Count II); and, alternatively, that Hiko was unjustly enriched by charging "exorbitant rates" (Count III).  The complaint seeks compensatory damages, treble damages, attorney's fees and prospective injunctive relief.[14]

---

[11] *See* Compl. Ex. A (PUC Compl.).

[12] *See* Compl. Ex. A (PUC Compl.).

[13] 73 Pa. Stat. Ann. §§ 201-1 *et seq.*

[14] *See* Compl.

Hiko has moved to dismiss the complaint in its entirety.  First, it contends that the economic loss doctrine bars Kantor's UTPCPL claim.  Second, it argues that the claim for breach of the covenant of good faith and fair dealing must be dismissed in light of the express contract between the parties.  Third, Hiko argues that Kantor cannot maintain an unjust enrichment claim simultaneously with a breach of contract claim.  Lastly, claiming that the pending administrative proceedings before the PUC are superior to the proposed class action, Hiko moves to strike the class allegations.  Alternatively, it requests a stay or dismissal of this action pending the outcome of the administrative proceeding.

### Economic Loss Doctrine

The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Excavation Technologies, Inc. v. Columbia Gas Company of Pennsylvania,* 985 A.2d 840, 841 n.3 (Pa. 2009) (citing *Adams v. Cooper Beach Townhouse Communities, L.P.*, 816 A.2d 301, 305 (Pa. Super. 2003)).  The doctrine prevents a plaintiff from recovering under a tort theory when the plaintiff's only loss is purely economic.  *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 (3d Cir. 2001) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).

Hiko contends that the economic loss doctrine bars Kantor's UTPCPL claim.  It argues that Kantor, by invoking the UTPCPL,[15] improperly attempts to convert his

---

[15] The UTPCPL is a consumer protection statute which prohibits unfair competitive methods and unfair or deceptive conduct or practices in trade or commerce.  It provides a private right of action for

breach of contract claim into a fraud claim.  Kantor counters that the breach of contract and the UTPCPL claims are independent causes of action and that the economic loss doctrine does not apply to fraud claims brought under the UTPCPL.

Hiko relies upon *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002).  In that case, predicting how the Pennsylvania Supreme Court would rule, the Third Circuit held that the economic loss doctrine bars common law intentional and statutory fraud claims, including those brought under the UTPCPL.  *Id.* at 678, 681.  It reasoned that the fraudulent misrepresentation claims were barred by the economic loss doctrine because they arose out of the parties' contract and were intertwined with the contract claims.  *Id.* at 680.

The *Werwisnki* court followed the typical analysis in predicting what the highest state court would hold.  *Id.* at 675 (quoting *Hughes v. Long,* 242 F.3d 121, 128 (3d Cir. 2001)).  It engaged in a four-step process, examining "(1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issues we face here." *Id.*  Because there were no Pennsylvania Supreme Court or intermediate appellate court decisions addressing the issue, the court looked to decisions in other jurisdictions.

*Werwinski* no longer has any vitality.  When it was decided, there was no guidance from Pennsylvania courts, leading the Third Circuit to predict how Pennsylvania's highest court would rule.  *Werwinski*, 286 F.3d at 675.  The

---

consumers that have sustained loss of money or property stemming from an unlawful method, act or practice.  *Knight v. Springfield Hyundai*, 81 A.3d 940, 949 (Pa. Super. 2013) (citation omitted).

Pennsylvania courts, the highest court and the intermediate appellate courts, had not yet addressed the issue. Since *Werwinski* issued, the Pennsylvania courts have spoken. They have held that the economic loss doctrine does not apply to UTPCPL claims.

A predictive ruling by the Third Circuit is generally binding on the district court. However, when the Pennsylvania intermediate appellate courts have ruled to the contrary and their decisions have not been overruled by the state's highest court, we are no longer compelled to follow the Third Circuit's prediction. *See Aceto v. Zurich Ins. Co.*, 440 F.2d 1320, 1322 (3d Cir. 1971) ("No one may properly rely upon what we have held as more than persuasive on a question of Pennsylvania law so long as the Pennsylvania Supreme Court has not ruled upon that legal question."). It is state law, not federal law, we must follow.

The Pennsylvania Supreme Court has not expressly held that the economic loss doctrine precludes recovery for economic losses resulting from violations of the UTPCPL. But, the Pennsylvania Superior Court has, holding that the doctrine does not bar statutory fraud claims brought pursuant to the UTPCPL. *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. 2013). Furthermore, the Pennsylvania Supreme Court has acknowledged that a negligent misrepresentation claim is outside the reach of the economic loss doctrine. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 288 (Pa. 2005).

In *Knight,* the Superior Court started its analysis quoting the Pennsylvania Supreme Court's definition of the economic loss doctrine, "no cause of action exists for **negligence** that results solely in economic damages unaccompanied by physical injury

7

or property damage."   81 A.3d at 952 (quoting *Excavation Technologies, Inc. v. Columbia Gas Co. of Pa.,* 985 A.2d 840, 841 (Pa. 2009)) (emphasis in original). Distinguishing statutory UTPCPL claims from negligence claims, the *Knight* court held that the economic loss doctrine did not apply to the UTPCPL claims brought by the buyer of a used car against the seller.   *Id.*

The Superior Court's holding, unless and until it is overruled by the Pennsylvania Supreme Court, is the law of Pennsylvania.   *See Commonwealth v. Forbes*, 867 A.2d 1268, 1279 (Pa. Super. 2005) (citation omitted).   In the absence of guidance from the Pennsylvania Supreme Court, we look to decisions of the intermediate appellate courts for assistance in predicting how the Supreme Court would rule.   *Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996) (citation omitted).   Indeed, rulings of the intermediate appellate courts are "accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise."   *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996) (citation omitted).   Indeed, under the Pennsylvania scheme, Pennsylvania lower courts must follow the precedential rulings of the Superior Court.   *See Benson ex rel. Patterson v. Patterson*, 782 A.2d 553, 555-56 (Pa. Super. 2001).   Thus, the *Knight* holding is binding Pennsylvania law.

In *Excavation Technologies*, the Pennsylvania Supreme Court approvingly noted the Superior Court's observation that application of the economic loss doctrine was limited to negligence actions and that the doctrine did not bar a negligent misrepresentation claim.   985 A.2d at 841-42.   In that case, a contractor, who suffered economic damages as a result of striking underground gas lines, sued the public utility

8

for failure to mark or properly mark its lines.  The contractor sought recovery under a negligent misrepresentation theory.  It brought the action under the One Call Act[16] and relied upon Section 552 of the Restatement (Second) of Torts, entitled "Information Negligently Supplied for the Guidance of Others."  *Id.* at 841 and nn. 1-2.

On appeal from the grant of a demurrer, the Superior Court affirmed.  *Excavation Technologies, Inc. v. Columbia Gas Co.,* 936 A.2d 111 (Pa. Super. 2007) (*en banc*).  In doing so, it noted an exception to the economic loss doctrine for negligent misrepresentation under Restatement Section 552.  *Id.* at 115-16.  It found that Section 552(1) and (2) did not factually apply; and, it declined to adopt Section 552(3).  It reasoned that the legislature, when it enacted the One Call Act, did not intend to impose liability on utility companies for economic harm and that the Act did not provide a private cause of action for economic loss.  *Id.* at 119.

The Supreme Court granted allowance of appeal to address whether Section 552 of the Restatement (Second) of Torts imposes liability for a contractor's economic losses caused by a public utility's failure to mark or properly mark the location of gas lines.  *Excavation Technologies*, 985 A.2d at 842.  It held that it did not.  *Id.* at 843.  In its analysis, the Supreme Court concluded that there was no statutory basis to impose liability for economic losses.  *Id.*  Here, there is a statutory basis for a cause of action for fraud under the UTPCPL.

Significantly, the Supreme Court did not hold that the economic loss doctrine applied to bar the negligent misrepresentation claim.  Its decision was only that Section

---

[16] 73 P.S. §§ 176-186.  The One Call Act aims to protect against physical harm to individuals working on construction sites and to avoid property damage to utility equipment and surrounding structures.

552 of the Restatement did not apply to public utility companies, not that the economic loss doctrine barred the negligent misrepresentation claim.  Indeed, it approved of the Superior Court's recognition that the doctrine "generally precludes recovery in *negligence actions* for injuries which are solely economic [and its acknowledgment of] an exception for negligent misrepresentation claims under § 552, which allows such claims to evade dismissal even if they assert purely economic losses."  985 A.2d at 841 (emphasis added) (citation omitted).

The Supreme Court's approval of the Superior Court's *en banc* conclusion that a negligent misrepresentation claim is beyond the reach of the economic loss doctrine indicates that the Supreme Court determined that the Superior Court correctly concluded that a cause of action for negligently supplying information seeking economic damages is not barred by the economic loss doctrine.

Mindful that rulings of intermediate appellate courts are accorded significant weight unless there is a "persuasive indication" that the highest court would rule otherwise, we conclude that the Superior Court's *Knight* decision, as approved by the Pennsylvania Supreme Court, must be followed.  We cannot ignore what the Pennsylvania courts have decided and how the law in Pennsylvania has evolved since *Werwinski* was decided.[17]  Therefore, in light of the *Knight* holding that the economic loss doctrine does not apply to UTPCPL claims, and the Pennsylvania Supreme Court's

---

[17] *Werwinski* has been widely criticized.  *See, e.g., O'Keefe v. Mercedes–Benz USA, LLC,* 214 F.R.D. 266, 275 (E.D. Pa. 2003) (engaging in a lengthy critique of *Werwinski* and declining to adopt the Third Circuit's reasoning); *Martin v. Ford Motor Co.,* 765 F. Supp. 2d 673, 685 n.8 (E.D. Pa. 2011) ("Since the Third Circuit decided *Werwinski*, numerous courts have recognized its reasoning may be inconsistent with Pennsylvania law.") (collecting cases); *Wulf v. Bank of Am., N.A.,* 798 F. Supp. 2d 586, 596 (E.D. Pa. 2011).  We do not join in the criticism.  Rather, our conclusion is based on the development of Pennsylvania law by the Pennsylvania courts after *Werwinski*'s prediction.

recognition that the economic loss doctrine is limited to negligence actions and does not bar a negligent misrepresentation claim, we conclude that the doctrine does not bar Kantor's statutory-based cause of action for fraud and misrepresentation under the UTPCPL.

Even if *Werwinski* were still binding, Kantor's UTPCPL claim would not be barred.  It does not fall within the ambit of the economic loss doctrine.  Kantor's fraud claims under the UTPCPL are separate and distinct from his contract claim.  His statutory claim arises from representations made prior to his entering into the contract. Essentially, he avers that he would not have entered into the contract had he not been fraudulently induced to do so.  The claim does not flow from the contract.  It preceded it.

Under the UTPCPL, Kantor can recover treble damages and attorney's fees.  His recovery in the contract action is limited to the difference between what he had bargained for and what he paid.  Kantor's entitlement to recovery arises from both the contract and the UTPCPL, that is, from common law and statutory law – two separate and distinct sources that are not mutually exclusive.  Therefore, we shall not dismiss the UTPCPL cause of action.

### Breach of the Covenant of Good Faith and Fair Dealing

Hiko argues that Kantor is impermissibly using an implied covenant of good faith and fair dealing cause of action to import terms that were not included in the contract. Specifically, it contends that this claim is predicated on an agreed rate cap where the written agreement provided for a variable rate.

Kantor counters that he is not alleging that there was a rate cap.  Rather, he contends that despite its promise to base utility rates on "market-related factors," Hiko

11

did not do so, resulting in an "unreasonable and exorbitant" rate, much higher than market rate.[18]   Thus, Kantor asserts that Hiko breached the contract by violating the implied covenant of good faith and fair dealing.

Pennsylvania has adopted Section 205 of the Restatement (Second) of Contracts.   *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. 1992).   Section 205 provides: "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."   Restatement (Second) of Contracts § 205.   This obligation extends only to the performance of those duties the parties have agreed to assume.   *Baker v. Lafayette College*, 504 A.2d 247, 256 (Pa. Super. 1986).

The duty of good faith and fair dealing "does not create independent substantive rights."   *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (citing *Commonwealth v. BASF Corp.*, No. 3127, 2001 WL 1807788, at *12 (Pa. Com. Pl. Mar. 15, 2001)).   It does not give rise to a cause of action separate and apart from a breach of contract cause of action.   Thus, in Pennsylvania, a claim predicated on a breach of the covenant of good faith is "subsumed in a breach of contract claim."   *Burton*, 707 F.3d at 432 (quoting *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 392 (Pa. Super. 2008)).

There is no one-size-fits-all definition of good faith.   As comment d to § 205 states, it depends on context.   Restatement (Second) of Contracts § 205 cmt. d.   "[E]vasion of the spirit of the bargain" has been recognized as a type of bad faith that violates the implied covenant.   *Id.*; *Somers*, 613 A.2d at 1213.   That is what Kantor avers.

---

[18] Compl. ¶ 39.

Kantor is not attempting to vary the terms of the contract.  Nor is he trying to defeat the express contractual terms.  Rather, he relies upon the terms of the contract to explain what duties Hiko had agreed to undertake.  *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000) (The covenant of good faith is "an interpretive tool" to aid the court in evaluating breach of contract claims).

The contract states that pricing for electricity will reflect the cost of natural gas, transportation to the consumer's home and other market-related factors.[19]  Kantor is claiming that Hiko had a duty to act in good faith in its performance of the contract by charging a rate that was related to market conditions.  Despite this duty, so Kantor alleges, Hiko did not perform as it had promised, that is, it did not calculate the rate it charged based on market-related factors.

Kantor's claim for breach of the covenant of good faith is not separate from his breach of contract claim.  It is an implied part of the contract.  It is based on allegations that Hiko failed to perform in good faith.  In short, Kantor is not asserting two separate contract causes of action, but a single one.   Accordingly, we shall not dismiss the breach of contract claim.

## Unjust Enrichment

Hiko moves to dismiss Kantor's unjust enrichment claim because he alleges the existence of a written contract between the parties.  Hiko correctly asserts that a cause of action for unjust enrichment cannot succeed where the transaction at issue is governed by an express contract.  *See, e.g., Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh,* 776 F.2d 1174, 1177 (3d Cir. 1985).

---

[19] Compl. Ex. B (Consumer Disclosure Statement) at ¶ 3.

Kantor concedes that, at the end of the day, both counts cannot co-exist.  He argues that, at this early stage, he can assert inconsistent theories of recovery.  We agree.

The Federal Rules of Civil Procedure allow a plaintiff to assert alternative or inconsistent legal theories.  Fed. R. Civ. P. 8(d)(3).  *See Cornell Companies, Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 265 (E.D. Pa. 2007) ("[Plaintiff's] claim for unjust enrichment is an appropriate alternative avenue of relief for the plaintiff to seek in the event no valid contract existed . . .").  This is what Kantor has done. Therefore, we shall not dismiss the unjust enrichment claim, even though it may not survive.

### Class Allegations

In a preemptive attack and without the benefit of discovery and a motion for class certification, Hiko seeks to strike the class allegations.  It grounds its argument on the superiority requirement of Federal Rule of Civil Procedure 23(b)(3), arguing that the pending proceedings against Hiko before the PUC "provide a superior process in which Plaintiff's proposed class can obtain full recovery."[20]

Kantor contends that the regulatory action and the putative class action are not similar.  He further argues that it is premature to strike the class allegations before discovery has been completed.

In addressing the superiority requirement, we must compare the benefits of alternative procedures in light of concerns for fairness and efficiency.  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)

---

[20] Def.'s Memorandum in Support of Mot. to Dismiss at 11 (Doc. No. 19).

(citation omitted).   Rule 23(b)(3) lists several non-exclusive factors to consider in the assessment:   the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action.   Fed. R. Civ. P. 23(b)(3).

At this stage, there is insufficient information to conduct an informed balancing assessment.   Erring in favor of the class action proceeding in this instance, as we must, we decline to strike the class allegations.   *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970) (citation omitted).

Hiko's counsel advised, at oral argument, that the part of the PUC proceeding in which the putative class members' interests are implicated has been settled and a final settlement is expected to be approved in the coming months.   Counsel for Kantor argued that the PUC settlement only covers claims that occurred during a limited time period.   In any event, the terms of the pending settlement are not known.

The only issue remaining before the PUC, assuming the settlement is approved, is whether civil penalties should be assessed against Hiko; and, if so, how much. Kantor and the putative class have no interest in Hiko's payment of penalties to the Commonwealth.   They have a strong interest in reimbursement of any overpayments for breach of the contract and in the remedies under the UTPCPL for fraud.

A private cause of action serves as an important cumulative law enforcement weapon where there is a simultaneous government action.   *Pettko v. Pennsylvania Am.*

*Water Co.*, 39 A.3d 473, 484-85 (Pa. Commw. 2012); *see also* William B. Rubenstein, *On What a "Private Attorney General" Is – And Why It Matters*, 57 Vand. L. Rev. 2129, 2146 (2004) (recognizing that private actions can serve as an important supplement to the government's enforcement of laws and public policies).   Significantly, the Public Utility Code provides that remedies from the PUC are cumulative and in addition to common law and statutory remedies.  66 Pa. Cons. Stat. Ann. § 103(c).

In *Pettko*, the Pennsylvania Commonwealth Court held that the PUC had exclusive jurisdiction over Pettko's conversion and contract claims, but it did not have exclusive jurisdiction over his UTPCPL claims.  In reaching its decision, the court noted that an administrative agency does not have exclusive jurisdiction "unless it has the power to award relief that will make a successful litigant whole."  39 A.3d at 484 (citing *Feingold v. Bell of Pa.,* 383 A.2d 791 (Pa. 1977)).  It concluded that some of the plaintiff's claims, if proven, would result in relief that the PUC did not have the power to grant.  *Id.*

The court agreed with the plaintiff that Section 103(c) of the Public Utility Code supported his position that he may pursue claims under the UTPCPL independent of the PUC claims.  *Pettko*, 39 A.3d at 484-85.  Section 103(c) provides:

> Remedies cumulative.  Except as otherwise provided in this part, nothing in this part shall abridge or alter the existing rights of action or remedies in equity or under common or statutory law of this Commonwealth, and the provisions of this part shall be cumulative and in addition to such rights of actions and remedies.

66 Pa. Cons. Stat. Ann. § 103(c).

In determining whether the PUC could make the plaintiff whole, the *Pettko* court focused the inquiry on the alleged wrongful conduct and "whether the PUC has the ability to provide a statutory remedy for the alleged wrongful conduct." 39 A.3d at 484. Using this approach, the court considered the different claims asserted and what remedies were available under each. It observed that the breach of contract and conversion claims sought redress for overcharging, and the UTPCPL claims alleged deceptive trade practices in addition to the overcharging. Then, it found that although the PUC could award relief for the overcharging, it could not provide complete relief for the deceptive practices under the UTPCPL. It concluded that "the relief potentially available to *Pettko* under the UTPCPL is substantially distinct from the relief available under the Public Utility Code." *Id.*

The Commonwealth Court observed that the General Assembly, in enacting the UTPCPL, provided consumers potential remedies that are greater than those they could get from the PUC. *Id.* at 484-85. It then held that the PUC refund action did not preclude the consumer's right to seek relief under the UTPCPL because the PUC had no power to award relief for such a claim. *Id.* at 485. It concluded that the UTPCPL claims are cumulative to the PUC remedies. *Id.*

This potential class action and the pending settlement recovery stemming from the PUC action are not alternatives. They are complementary. They share the goal of protecting consumers and deterring unlawful conduct by companies that provide essential services to the public. Yet, there are different remedies available under each. Thus, as in *Pettko*, those remedies are cumulative within the meaning of the Public Utility Code.

17

**Stay In Lieu of PUC Proceedings**

Alternatively, Hiko requests that we stay this action pending resolution of the PUC action.  It argues that a stay would be brief and that Kantor will not be prejudiced if a stay is granted.  Kantor counters that staying this action indefinitely would prejudice the putative class.

At oral argument, Hiko stated that the part of the PUC action in which the putative class's interests would be represented will no longer proceed.  That portion of the administrative proceeding has been settled by Hiko, the Consumer Advocate and the Attorney General, and is awaiting PUC approval.  The terms of the settlement are unknown.  Therefore, because there is no longer any issue before the PUC affecting the putative class, we decline to stay this action.[21]

**Conclusion**

For the reasons stated, we shall deny Hiko's motion to dismiss.  We shall also deny Hiko's request to strike the class allegations and to stay this action.

---

[21] Hiko, citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), also requests that we abstain from exercising jurisdiction over this action.  We decline to abstain from exercising jurisdiction for the same reasons we deny Hiko's request for a stay.